IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FUTURE ENVIRONMENTAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 13 C 709 |
| | ) | |
| JONATHAN FORBES, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge,

Before the Court is Plaintiff's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a). For the following reasons, the Court grants Plaintiff's summary judgment motion.

### BACKGROUND

**I.     Northern District of Illinois Local Rule 56.1**

Because Defendant is a pro se litigant, Plaintiff served him with a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" as required by Northern District of Illinois Local Rule 56.2. The notice explains the consequences of failing to properly respond to a motion for summary judgment and statement of material facts under Federal Rule of Civil Procedure and Local Rule 56.1.

Local Rule 56.1 "is designed, in part, to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is

necessary." *Delapaz v. Richardson,* 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted). Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Cracco v. Vitran Exp., Inc.,* 559 F.3d 625, 632 (7th Cir. 2009). "The opposing party is required to file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." *Id.* (citing N.D. Ill. R. 56.1(b)(3)(B)). Local Rule 56.1(b)(3)(C) requires the nonmoving party to present a separate statement of additional facts that requires the denial of summary judgment. *See Ciomber v. Cooperative Plus, Inc.,* 527 F.3d 635, 643-44 (7th Cir. 2008).

In general, the purpose of Local Rule 56.1 statements and responses is to identify the relevant admissible evidence supporting the material facts, not to make factual or legal arguments. *See Cady v. Sheahan,* 467 F.3d 1057, 1060 (7th Cir. 2006) ("statement of material facts did [] not comply with Rule 56.1 as it failed to adequately cite the record and was filled with irrelevant information, legal arguments, and conjecture"). "When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion." *Cracco*, 559 F.3d at 632; *see also Frey Corp. v. City of Peoria, Ill.,* 735 F.3d 505, 513 (7th Cir. 2013).

In sum, "[f]or litigants appearing in the Northern District of Illinois, the Rule 56.1 statement is a critical, and required, component of a litigant's response to a motion for summary judgment. The purpose of the local rule is to make the summary judgment process less burdensome on district courts, by requiring the parties to nail down the relevant facts and the way they propose to support them." *Sojka v. Bovis Lend Lease, Inc.,* 686 F.3d 394, 398 (7th Cir. 2012).

Defendant has failed to respond to the motion for summary judgment more than one month after the deadline for his response. As such, the Court accepts all properly supported assertions in Plaintiff's statement of material facts at true to the extent that the facts are supported in the record. *See* L.R. 56.1(b)(3)(C); *Apex Digital, Inc. v. Sears, Roebuck & Co.,* 735 F.3d 962, 965 (7th Cir. 2013); *Keeton v. Morningstar, Inc.,* 667 F.3d 877, 880 (7th Cir. 2012). In addition, the Court is not required to scour the record looking for factual disputes nor is the Court required to piece together Defendant's arguments for him. *See Diadenko v. Folino,* 741 F.3d 751, 757 (7th Cir. 2013); *see also Herman v. City of Chicago,* 870 F.2d 400, 404 (7th Cir. 1989) ("A district court need not scour the record to make the case of a party who does nothing."). Defendant's failure to comply with Local Rule 56.1, however, does not result in an automatic grant of summary judgment in favor of Plaintiff. Instead, the Court still must evaluate all facts in the light most favorable to him, the non-moving party. *See* Fed. R. Civ, P. 56(e)(2); *Keeton*, 667 F.3d at 884. With these standards in mind, the Court turns to the relevant facts of this case.

## II.     Relevant Facts

Plaintiff Future Environmental, Inc. ("Future") is an Illinois corporation with its principal place of business in Mokena, Illinois. Defendant Jonathan Forbes ("Forbes") is a citizen of the State of Indiana. The matter in controversy exceeds $75,000, thus the Court has diversity jurisdiction.

Future employed Defendant Forbes as a truck driver from May 18, 2009 through December 7, 2012. (R. 42-2 ¶ 4.) Future contracts with Wright Express Corporation ("WEC") for fleet fuel cards for the drivers of its fleet of trucks. WEC is a fuel card company that issues fuel cards to companies with fleets in order to make fuel purchases easier for drivers and to

3

consolidate fuel purchase expense reporting. (*Id.* ¶ 5.) Future gave each of its drivers his own WEC card. (*Id.* ¶ 6.) Each WEC card had a different account number and each driver was given his own personal identification number ("PIN") to use with his WEC card. (*Id.*) During the relevant time, Future assigned each driver a PIN that was the last 4 digits of the driver's social security number. (*Id.* ¶ 7.) Future attempted to maintain secrecy of its assigned PINs from other drivers and gave its drivers specific instructions regarding the WEC card. Specifically, Future instructed its drivers that (1) each driver could only use the card for company fuel purchases; (2) each driver had his own PIN to use with the card; (3) the driver maintained the responsibility for his WEC card; and (4) the driver could not give the card to anyone else to use. (*Id.* ¶ 9.) In order to purchase gas at a pump, the driver had to insert his PIN to identify his use of the card. (*Id.* ¶ 10.)

In approximately early December 2012, a third party informed Future that Forbes was using his WEC card to sell fuel at very large discounts to people at gas stations. (*Id.* ¶ 11.) After receiving this tip, Future's management did an internal review of the WEC fuel purchase reports, especially because it had not closely monitored the WEC monthly reports. These WEC reports revealed that Defendant Forbes was using his WEC card to purchase fuel far beyond the amount necessary for use of his company vehicles. (*Id.* ¶ 14.) On December 1, 2012, for example, Forbes made 22 separate purchases of fuel, totaling 2,116.011 gallons of fuel. (*Id.* ¶ 15.) Twenty-one of these purchases were made within a period of only two hours. (*Id.*) In addition, 13 of the 22 purchases were less than five minutes apart from the prior purchase. (*Id.*) Thirteen of the purchases occurred at the same gas station. (*Id.*) The total cost to Future for the gas purchases on Forbes' WEC fuel card on December 1, 2012, was $8,326.41. (*Id.*) Forbes also

obtained other drivers' WEC PINs and used those PINs to make fuel purchases on his card. (*Id.* ¶¶ 17, 18, 19.)

On December 7, 2012, Steve Lempera, Future's President, went to Forbes' job site to confront him regarding his improper use of the fuel card. Forbes handed his WEC fuel card to Lempera. Lempera terminated Forbes's employment that same day. Shortly after Lempera terminated Forbes' employment, Forbes came to Lempera's office at Future's headquarters in Mokena, Illinois. (*Id.* ¶ 24.) Forbes admitted to Lempera that he was improperly using the WEC card to make fuel purchases for other people. (*Id.* ¶ 25.) Forbes told Lempera that he would repay Lempera for the improper purchases, but he did not want to be arrested because he had a family to take care of. (*Id.* ¶ 25.) Forbes, however, never repaid any of the money. (*Id.* ¶ 26.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted).

ANALYSIS

Plaintiff has sued Defendant Forbes for the following causes of action: 1) breach of a fiduciary duty; 2) conversion; and 3) fraud. Plaintiff now moves for summary judgment on each of these claims.

**I.      Breach of Fiduciary Duty**

In order to establish breach of a fiduciary duty in Illinois, Plaintiff must prove the following: "(1) a fiduciary duty exists; (2) the fiduciary duty was breached; and (3) the breach proximately caused the injury of which the plaintiff complains." *Ball v. Kotter*, 723 F.3d 813, 826 (7th Cir. 2013), citing *Neade v. Portes,* 193 Ill.2d 433, 250 Ill.Dec. 733, 739 N.E.2d 496, 502 (2000). Viewing the evidence in the light most favorable to Defendant, Plaintiff has established that Defendant breached his fiduciary duty to Plaintiff.

Employees owe a fiduciary duty to their employers. *Lawlor v North Am. Corp. of Ill.*, 368 Ill.Dec. 1, 983 N.E.2d 414, 433 (Ill. 2012). *See also Kovac v. Barron*, 6 N.E.3d 819, 379 Ill. Dec. 491, 505 (2d Dist. 2014) (employees owe a fiduciary duty to the corporate employer); *Foodcomm Int'l. v. Barry*, 328 F.3d 300, 304 (7th Cir. 2003) ("employees, as agents of their employer, do not fall outside the purview of a breach of fiduciary duties"). As part of his employment, Plaintiff entrusted Defendant with a fuel card to use for work purposes only. Plaintiff Future specifically instructed Defendant that he could only use the fuel card for company fuel purchases, he had to use his own unique PIN with the card, and he could not give the card to anyone else. Defendant had an obligation to use the fuel card as authorized by Plaintiff. Plaintiff has established that Defendant breached his fiduciary duty when he used Plaintiff's WEC fuel card, without Plaintiff's knowledge, for unauthorized purchases of fuel. He also used the PIN number of other employees to make unauthorized purchases. Defendant's

improper use of the fuel card caused the financial loss to Plaintiff.  Plaintiff, therefore, is entitled to summary judgment on this count.

## II.     Conversion

Plaintiff also brings a common law conversion count against Defendant.  To prove conversion under Illinois law, a plaintiff must establish the following elements:  (1) that the plaintiff has a right to the property; (2) that the plaintiff has an absolute and unconditional right to the immediate possession of the property; (3) that the plaintiff made a demand for possession; and (4) that the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property.  *Kovac,* 6 N.E.3d at 838, citing *Cirrincione v. Johnson,* 184 Ill.2d 109, 114, 234 Ill.Dec. 455, 703 N.E.2d 67 (1998).  "Money may be the subject of conversion, but it must be capable of being described as a specific chattel, although it need not be specifically earmarked."  *Kovac*, 6 N.E.3d at 838.  It must be shown that the money "at all times belonged to the plaintiff and that the defendant converted it to his own use."  *Id.*  "[A]n action for the conversion of funds may not be maintained to satisfy a mere obligation to pay money."  *In re Thebus,* 108 Ill.2d 255, 91 Ill.Dec. 623, 483 N.E.2d 1258, 1260 (1985).  *See also Cohen v. American Sec. Ins. Co.*, 735 F.3d 601, 614 (7th Cir. 2013).

Here, no genuine dispute exists that Defendant converted Plaintiff's funds when he used Plaintiff's fuel card in order to purchase fuel for others unrelated to Plaintiff's business.  The fuel card and the money spent on it belonged to Plaintiff and Plaintiff had an absolute and unconditional right to the immediate possession of it.  Indeed, Defendant Forbes admitted to Future's President that he was improperly using the fuel card to make fuel purchases for other people.  Plaintiff made a demand for the money.  It is undisputed that Defendant Forbes told Plaintiff that he would repay it for the improper purchases, but he never did.  Plaintiff never

7

authorized Defendant to use the fuel card to purchase fuel for any reason other than Plaintiff's business, yet Defendant nonetheless wrongfully did so. Plaintiff has met its burden. As such, the Court grants summary judgment for Plaintiff on its conversion claim.

### III. Fraud

In Illinois, a plaintiff can base a common law fraud claim on a fraudulent misrepresentation or on a fraudulent concealment of a material fact. *Trs. of AFTRA Health Fund v. Biondi,* 303 F.3d 765, 776 (7th Cir. 2002). In order for Plaintiff to prove a claim premised on a fraudulent concealment, Plaintiff must prove the following:

> (1) the concealment of a material fact; (2) the concealment was intended to induce a false belief, under circumstances creating a duty to speak; (3) the innocent party could not have discovered the truth through a reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection, and relied upon the silence as a representation that the fact did not exist; (4) the concealed information was such that the injured party would have acted differently had he been aware of it; and (5) that reliance by the person from whom the fact was concealed led to his injury.

*Id.* at 777. In addition, "[t]o plead [fraudulent concealment] properly, in addition to meeting the elements of fraudulent misrepresentation, a plaintiff must allege that the defendant intentionally omitted or concealed a material fact that it was under a duty to disclose to the plaintiff." *Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547, 571 (7th Cir. 2012) (citing *Weidner v. Karlin,* 402 Ill.App.3d 1084, 342 Ill.Dec. 475, 932 N.E.2d 602, 605 (3d Dist. 2010)). A fiduciary relationship gives rise to a duty to disclose. *Wigod,* 673 F.3d at 571 (quoting *Connick v. Suzuki Motor Co.,* 174 Ill.2d 482, 221 Ill.Dec. 389, 675 N.E.2d 584, 593 (Ill. 1996)).

Because Defendant owed a fiduciary duty to Plaintiff, Defendant had a duty to disclose his improper use of the fuel card to Plaintiff. Plaintiff entrusted Defendant with the fuel card and relied upon his honesty to use to card for company fuel purchases. There is no genuine dispute that Defendant used the fuel card for unauthorized purchases and concealed this fact from

8

Plaintiff. Defendant further concealed his actions through the use of other employee's PIN numbers. Defendant's concealment of the improper usage led to Plaintiff's financial injury. Furthermore, Defendant does not dispute that Plaintiff could not have discovered the truth of his improper actions through a reasonable inquiry or inspection. The Court therefore grants summary judgment for Plaintiff on this claim.

## IV. Damages

Plaintiff seeks both compensatory and punitive damages for Defendant's wrongs. The Court addresses each category of damages separately.

### A. Compensatory

Defendant Forbes used his fuel card to purchase $180,266.83 in fuel from December 1, 2011 through December 7, 2012. (R. 42-4 at ¶ 29.) Specifically, he purchased the following amounts:

| | |
|---|---|
| December 2011: | $ 4,341.55 |
| January 2012: | $ 4,078.15 |
| February 2012: | $ 3,734.26 |
| March 2012: | $ 7,053.54 |
| April 2012: | $ 3,707.59 |
| May 2012: | $10,007.87 |
| June 2012: | $ 7,842.98 |
| July 2012: | $13,011.36 |
| August 2012: | $19,659.27 |
| September 2012: | $34,385.27 |
| October 2012: | $29,0067.51 |
| November 2012: | $31,870.77 |
| December 2012 (only 7 days): | $11,567.71 |
| TOTAL: | $180,266.83 |

(*Id.*)

It is undisputed Plaintiff Future's truck drivers do not spend more than $2,000 per month — or $22,500 during this time period — on fuel purchases with their fuel cards. (*Id.* ¶ 28.) Plaintiff paid the full $180,266.83 in fuel charges on Defendant's fuel card, even though Defendant could

9

not have charged more than $22,500 in fuel for work purposes during this time period. (*Id.* ¶ 30.) The Court therefore awards Plaintiff compensatory damages in the amount of $157,766.83.

### B. Punitive

In addition, Plaintiff seeks punitive damages against Defendant Forbes. Illinois law permits the award of punitive damages for conversion and breach of fiduciary duty claims. *See Cirrincione v. Johnson*, 184 Ill.2d 109, 114, 234 Ill.Dec. 455, 703 N.E.2d 67, 70 (1998) (conversion); *Tully v. McLean*, 409 Ill.App.3d 659, 670, 948 N.E.2d 714, 350 Ill.Dec. 434 (1st Dist. 2011) (breach of fiduciary duty). Under Illinois law, punitive damages are available if "the defendant has acted willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others." *Blount v. Stroud,* 395 Ill.App.3d 8, 20, 333 Ill.Dec. 845, 915 N.E.2d 925 (1st Dist. 2009) (citing *Kelsay v. Motorola, Inc.,* 74 Ill.2d 172, 186, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978)). In assessing reprehensibility, courts consider the following factors:

> (1) whether the harm caused was physical as opposed to economic; (2) whether the tortious conduct evinced an indifference to or a reckless disregard for the health and safety of others; (3) whether the target of the conduct was financially vulnerable; (4) whether the conduct involved repeated actions or was an isolated incident; and (5) whether the harm was the result of intentional malice, trickery, or deceit, or mere accident.

*Int'l. Union of Oper. Eng'rs, Local 150 v. Lowe Excavating Co.,* 225 Ill.2d 456, 470, 312 Ill.Dec. 238, 870 N.E.2d 303 (2006). Given Defendant's excessive charges and willful conduct, the Court, in its discretion, awards Plaintiff punitive damages in the amount of $25,000.

## CONCLUSION

For these reasons, the Court grants Plaintiff's motion for summary judgment. Judgment is entered against Defendant Forbes in the amount of $182,766.83.

**Dated:** July 3, 2014

                                          **ENTERED**

                                          _____
                                          **AMY J. ST. EVE**
                                          **United States District Court Judge**